ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| LJJ PROPERTIES PR LLC<br><br>QUERELLANTES-RECURRENTE<br><br>V.<br><br>JUNTA DE DIRECTORES Y CONSEJO DE TITULARES, REPRESENTADOS POR SU PRESIDENTE, FRANCISCO CABELLO, CONDOMINIO SANTA MÓNICA T/C/C ONE CANDINA<br><br>QUERELLADOS-RECURRIDOS<br><br>ONE CANDINA 12, LLC<br><br>Parte Interventora | TA2025RA00375 | *REVISIÓN DE DECISIONES ADMINISTRATIVAS* procedente del Departamento de Asuntos al Consumidor<br><br>Caso Núm.:<br>C-SAN-2022-0010451<br><br>Sobre:<br><br>Ley de Condominios |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Álvarez Esnard, y la jueza Prats Palerm

Brignoni Mártir, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 23 de febrero de 2026.

Comparece ante nos, LJJ Properties PR, LLC (en adelante, "LJJ Properties" o "recurrente"), a los fines de solicitar nuestra intervención para que dejemos sin efecto la *Resolución* emitida el 31 de octubre de 2025, notificada el 3 de noviembre de 2025, por el Departamento de Asuntos del Consumidor (en adelante, "DACo"). Mediante el referido dictamen, la agencia recurrida desestimó la querella presentada por Liliana Rada Carrasquillo, Javier Janer García (en adelante, "esposos Janer") y Outside Box Corp. (en adelante y en conjunto, "querellantes"). Por consiguiente, ordenó el cierre y archivo de la querella, y les impuso a los querellantes la suma de $1,500.00, en concepto de honorarios de abogado por temeridad, a favor de Junta de Directores y Consejo de Titulares del Condominio Santa Mónica t/c/c Condominio One Candina, representado por su Presidente, Francisco Cabello (en adelante, "Consejo de Titulares" o "recurridos").

Por los fundamentos que exponemos a continuación, se **confirma** la *Resolución* recurrida.

**I.**

El 10 de enero de 2022, los querellantes presentaron una *Querella* en el DACo en contra del Consejo de Titulares.[1] Alegaron que el Consejo de Titulares del Condominio Santa Mónica t/c/c One Candina (en adelante, "Condominio") se extralimitó en sus facultades al plantear y considerar asuntos en una Asamblea General Anual que no estaban claramente contenidos en la agenda de la convocatoria para dicha Asamblea. En particular, sostuvo que no especificaba como un asunto para discutir la votación para aprobar la venta de la azotea del Condominio, sino que solo mencionaba que se llevaría a votación la viabilidad de vender y los puntos a favor y en contra de dicha posibilidad, así como discutirse el precio. Alegaron que la omisión de la venta en la agenda de forma clara y específica automáticamente anula cualquier acuerdo al respecto. Además, adujeron que el techo del Condominio es un elemento esencial común general necesario y que no es susceptible de propiedad individual por los titulares. Por otro lado, sostuvieron que, aun si se determinara que el techo es una azotea, no hubo unanimidad para la venta, ya que los querellantes hicieron objeciones válidas al respecto.[2]

Por su parte, el 25 de enero de 2022, el Consejo de Titulares presentó su *Contestación a Querella*.[3] En la referida contestación, sostuvo que la *Querella* deja de exponer una reclamación que justifique la concesión de un remedio, que todos los actos realizados por su parte se llevaron a cabo dentro de lo permitido en ley. Además, arguyó que los querellantes actuaron con manifiesta temeridad, por lo que solicitó la desestimación de la *Querella*.

Por otro lado, el 9 de febrero de 2022, compareció One Candina 12, LLC (en adelante, "One Candina 12"), titular del apartamento del Piso

---

[1] Pág. 56 del Apéndice Núm. 3 de la Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA). Conviene destacar que el DACo declaró Ha Lugar una Solicitud de Desestimación respecto a uno de los coquerellantes, Outside Box Corp., por este no ser titular en el Condominio (Véase Copia Certificada del Expediente Administrativo Intitulada C-SAN-2022-0010451 II).

[2] Cabe señalar que, mediante una *Moción Solicitando Sustitución de Parte* (Véase Copia Certificada del Expediente Administrativo Intitulada C-SAN-2022-0010451 I) los querellantes solicitaron su sustitución en los procedimientos administrativos por el nuevo titular del apartamento Número diez (10) del Condominio One Candina, LJJ Properties PR, LLC.

[3] Véase Copia Certificada del Expediente Administrativo Intitulada C-SAN-2022-0010451 I.

Número 12 del Condominio y quien adquirió los derechos del uso de superficie de la azotea del Condominio One Candina en la Asamblea Anual llevada a cabo el 9 de noviembre de 2021. Presentó, junto con una *Moción Solicitando Intervención*[4], su *Contestación a Querella*[5]. En esta, planteó las mismas defensas que el Consejo de Titulares. En particular, sostuvo que la *Querella* deja de exponer una reclamación que justifique la concesión de un remedio, que el Consejo de Titulares descargó sus obligaciones dentro del marco de la *Ley de Condominios de Puerto Rico*, Ley Núm. 129 de 16 de agosto de 2020, según enmendada (en adelante, "Ley de Condominios"), y que cumplió a cabalidad sus responsabilidades.

Luego de celebrada una vista administrativa el 26 de septiembre de 2025, se emitió la *Resolución* que hoy nos ocupa, el 31 de octubre de 2025, notificada el 3 de noviembre de 2025.[6] El foro administrativo concluyó que la convocatoria notificada a los titulares del Condominio para la Asamblea Anual celebrada el 9 de noviembre de 2021 constituyó un aviso suficiente en cuanto a los temas que se someterían para aprobación. Además, expresó que la Asamblea se llevó a cabo conforme a derecho y que se siguieron rigurosamente los procedimientos establecidos en el Artículo 52 de la Ley de Condominios, *supra*. Ordenó la desestimación de la *Querella* e impuso a los querellantes la suma de $1,500.00, en concepto de honorarios de abogado por temeridad.

En el referido dictamen, se hicieron las siguientes determinaciones de hechos:

1. El Condominio Santa Mónica t/c/c One Candina (en adelante, "el Condominio"), fue sometido al Régimen de la Propiedad Horizontal en virtud de la Escritura Número 19 titulada *Escritura de Construcción y Constitución de Propiedad en Condominio*, otorgada el 28 de noviembre de 1960 ante el Notario Público José A. Suro (en adelante, "la Escritura Matriz". El querellado Consejo de Titulares, representado por su Junta de Directores, es, en virtud de dicho régimen, responsable del mantenimiento, vigilancia, seguridad y administración de las áreas comunes generales del Condominio. La Junta de Directores del Condominio One Candina es presidida por el Sr. Francisco Cabello.

---

[4] Véase Copia Certificada del Expediente Administrativo Intitulada C-SAN-2022-0010451 I.
[5] Véase Copia Certificada del Expediente Administrativo Intitulada C-SAN-2022-0010451 I.
[6] Apéndice Núm. 2 de la Entrada Núm. 1 del SUMAC TA.

2. La parte querellante LJJ Properties, LLC., es titular del apartamento10 del Condominio One Candina, en virtud de la Escritura número 14 titulada, en *Deed of Transfer and Conveyance of Real Estate Property in Exchange of Membership Interest*, otorgada el 17 de noviembre de 2022, ante la Notaria Luz Yanix Vargas Pérez.

3. Los representantes de la parte querellante, Liliana Rada Carrasquillo Janer, también conocida como Liliana Janer y Javier Manuel Janer García, también conocido como Javier Janer, quienes residen en el estado de Texas, Estados Unidos de América eran los titulares previos del apartamento número 10 y son los actuales representantes de la entidad corporativa querellante".

4. El Condominio One Candina tiene doce (12) unidades de apartamento, distribuidos en cada una de las plantas del edificio. Esto es, un apartamento por piso, con su correspondiente vestíbulo frente al elevador de pasajeros que, por definición de la Escritura Matriz, constituye un elemento común limitado para el uso exclusivo del titular de la unidad correspondiente.

5. Ningún otro titular puede acceder piso alguno que no sea el suyo, por medio de los vestíbulos de las unidades, sin la autorización y acceso extendido por el titular del apartamento correspondiente a dicho piso.

6. El mismo expositivo TERCERO, sobre la *Descripción General del Condominio,* a las páginas 5-6, dispone que "*en cada una de las primeras doce plantas radica un apartamento residencial, enumerados con los números del Uno (1) al Doce (12). Sobre el piso número duodécimo está localizada una estructura que contiene los cuartos de máquinas de los dos elevadores del edificio, la chimenea del incinerador y la caja de la escalera en su terminación superior, y de donde se tiene acceso al techo o azotea de la planta duodécima*".

7. En su inciso B (7) la Escritura Matriz define, entre sus elementos comunes generales, el techo del Condominio.

8. La representante de la parte querellante, Liliana Janer, admitió desconocer la diferencia entre la definición de lo que es el techo y la azotea. No, obstante, la Sra. Liliana Janer y su esposo han subido en varias ocasiones a la azotea utilizando la escalera.

9. La parte interventora, One Candina 12, LLC, es titular del apartamento número 12, el cual constituye el Penthouse del edificio.

10. Todos los titulares pueden hacer uso del techo. Actualmente el acceso a la azotea está controlado debido a que no cuenta con barandas de protección y se suscitó un incidente, reportado en el Condominio en el que unos menores de edad, sin supervisión adulta, lograron acceso al área. Ese acceso se mantendrá controlado hasta que se instalen las barandas como medidas de seguridad.

11. El 24 de octubre de 2021 la Junta de Directores del Condominio One Candina notificó la Convocatoria a la Asamblea Anual Ordinaria a celebrarse el 9 de noviembre de 2021. El tema número 10 de la agenda se identificó como: *Discussion and possible approval of the feasibility of selling the building's rooftop to the owner of the 12th floor. Discussion on the Sale Price and possible use of the funds.*

12. En la fecha convocada de 9 de noviembre de 2021 se celebró la Asamblea en la que los entonces titulares de la unidad 10, Javier y Liliana Janer, estuvieron presentes.

13. Bajo el tema número 10 de la agenda, los titulares debatieron extensamente la viabilidad de la cesión del derecho de uso de la superficie de la azotea, y el interés manifestó por el titular del apartamento 12, One Candina 12, LLC, así como su oferta de $175,000.00.

14. Entre los elementos considerados por el Consejo de Titulares sobre el precio propuesto de $175,000.00, se encuentra: (a) la necesidad de allegar fondos para obras de mejoras requeridas en el edificio y pago de deudas de las obras ya iniciadas, evitándola imposición de una derrama a los titulares; (b) limitaciones de acceso, puesto que el elevador de pasajeros no llega hasta la azotea, sino hasta el vestíbulo del apartamento 12 del título de  One Candina 12, LLC; (c) durante los 60 años de existencia del Condominio no ha habido una iniciativa de desarrollo de la superficie de la azotea para un uso común, lo que requeriría una inversión sustancial de todos los titulares para extender la llegada del elevador al piso 13, la instalación de una verja perimetral y las mejoras necesarias en el área de azotea. Ninguna otra oferta fue formulada por titular alguno.

15. La cesión propuesta no es sobre la totalidad de la azotea, sino que el Consejo se reserva una parte que será protegida con barandas de seguridad una vez se concluya el litigio.

16. En caso de alguna emergencia que lo permita, los titulares pueden subir al techo por la escalera.

17. Aun cuando no se detalla en el Acta de la Asamblea, los titulares fueron orientados por el Presidente de la Junta de Directores sobre las consideraciones de seguridad en el uso del techo.

18. Luego del amplio debate, la oferta del titular del piso 12, aquí interventor, fue favorecida por los presentes y representados en la asamblea, a excepción de los querellantes y el titular de la unidad número 5, Simon Lobanov, quienes manifestaron su oposición.  Por su parte, el titular de la unidad 7 se abstuvo de votar.

19. La oposición estuvo basada en que la superficie de la azotea es el único espacio disponible en el edificio que puede desarrollarse como un área de uso común para el disfrute de todos los titulares, estableciendo un *Beach Club* o un *Owner´s Club* para disfrutar de la vista y los alrededores. No se presentó prueba de que dicha idea hubiese sido propuesta previamente a la Junta de Directores o el Consejo de Titulares.

20. Dichos fundamentos de oposición fueron confrontados por el Consejo de Titulares con el hecho de que el elevador de pasajeros no llega hasta la azotea, sino al vestíbulo privado de la unidad del Piso 12 enfatizando esa limitación de acceso.

21. La validez de la objeción de los opositores, reacciones y respuestas fueron llevadas a votación por el Consejo de titulares y rechazadas por el voto mayoritario.

22. Por su parte, el titular del piso 7, José Joaquín del Rincón, quien se abstuvo de votar en cuanto a la oferta, votó a favor de la validez de la oposición de las unidades 5 y 10 sin establecer los fundamentos de este voto.

23. Una vez declarados como caprichosos los fundamentos del voto en oposición, dándolo por no puestos mediante los mecanismos dispuesto por el Artículo 52 de la Ley de Condominios, quedó configurada la unanimidad en la aprobación de los titulares presentes y representados, de la transacción de cesión de derecho de uso de la superficie de la azotea del Condominio.

24. Antes de la Asamblea de 9 de noviembre de 2021, la Sra. Liliana Janer también, discutió con otros titulares sus ideas sobre el uso del techo para actividades comunales. Esos titulares con los que discutió el asunto votaron en la Asamblea a favor de la cesión al titular del piso 12 del uso de la azotea.

25. El 22 de noviembre de 2021 la Junta de Directores notificó a los titulares el Acta de la Asamblea que detalla el debate, las oposiciones para atender las oposiciones, su validez, así como el resultado.

26. El titular del piso 9 sometió, mediante comunicación electrónica a la Junta de Directores, su oposición al acuerdo de cesión de uso de la superficie de la azotea, basándola en los mismos fundamentos expuesto por la parte querellante en la asamblea.

27. Toda vez que ese titular ausente adoptó los mismos fundamentos de la parte querellante, los que fueron expresamente rechazados por el Consejo de Titulares reunidos en la asamblea 9 de noviembre de 2021, la Junta de Directores la declaró como infundada, tal cual hizo el Consejo de Titulares, quedando, igualmente, su voto opositor descartado.

28. El resultado de este procedimiento seguido de forma rigurosa por el Consejo de Titulares y su Junta de Directores, es la aprobación unánime de la transacción de cesión al titular del Apartamento 12 del derecho de uso de la superficie de la azotea por el pago de la suma de $175,000.00.

Inconforme, el 3 de diciembre de 2025, la recurrente compareció ante nos mediante un *Recurso de Revisión* [7] y esbozó los siguientes señalamientos de error:

**PRIMER ERROR**: ERRÓ EL DACO AL VALIDAR UN ACUERDO DE VENTA EXCLUSIVA DE UN ELEMENTO COMÚN GENERAL QUE, SEGÚN LOS PROPIOS HECHOS PROBADOS, ERA NULO POR FALTA DE UNANIMIDAD Y POR VIOLAR EL DESTINO DE UN ELEMENTO COMÚN GENERAL SIN ENMENDAR LA ESCRITURA MATRIZ.

**SEGUNDO ERROR**: ERRÓ EL DACO AL VALIDAR UNA CONVOCATORIA DEFECTUOSA QUE NO ANUNCIABA LA APROBACIÓN DE LA VENTA DE LA AZOTEA DEL CONDOMINIO NI EL PRECIO.

**TERCER ERROR**: ERRÓ EL DACO AL IGNORAR EL HALLAZGO PROBADO DE QUE LA JUNTA NO PRESENTÓ PLAN DE SEGURIDAD PARA ACCESO A LA AZOTEA NI DISCUTIÓ PROTOCOLOS DE EVACUACIÓN.

**CUARTO ERROR**: ERRÓ EL DACO AL IMPONER INDEBIDAMENTE HONORARIOS POR ALEGADA TEMERIDAD, EN AUSENCIA TOTAL DE BASE LEGAL O FÁCTICA.

Mediante *Resolución* emitida el 8 de diciembre de 2025, le ordenamos a la parte recurrida que presentara su alegato en oposición. En cumplimiento de ello, el 7 de enero de 2026, el Consejo de Titulares presentó el aludido alegato.

---

[7] Entrada Núm. 1 del SUMAC TA.

En síntesis, alegó que la oposición de los querellantes a la venta de la azotea del Condominio en la Asamblea Anual era de carácter caprichoso, ya que fue a base de un deseo de ver, ocasionalmente, los atardeceres desde una azotea que no utiliza. Sostuvo que de la convocatoria se desprende que todos los titulares del Condominio fueron debidamente informados sobre el tema de viabilidad de la transacción y que se trataba de un asunto que, por sus circunstancias, tenía probabilidades de poder llevarse a cabo. Además, arguyó que no existe un requisito de un plan de emergencia adicional al dispuesto en la Ley de Condominios, *supra*, que fuese exigible para la aprobación de una cesión del uso de un elemento común general, como el aprobado a favor del titular del piso 12. Asimismo, alegó que la parte recurrente no demostró que el DACo haya actuado con prejuicio, parcialidad, error de derecho o claro abuso de discreción, por lo que no se justifica la intervención del Tribunal de Apelaciones con la determinación emitida por el foro administrativo.

Con el beneficio de la comparecencia de ambas partes, procedemos a esbozar el marco doctrinal aplicable a la controversia que hoy nos ocupa.

## II.

### -A-

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de las facultades delegadas por ley, cumplan con los mandatos constitucionales aplicables, y asegura que los ciudadanos tengan un foro al cual recurrir para vindicar sus derechos. *Voilí Voilá Corp. et al v. Mun. Guaynabo,* 213 DPR 743, 753 (2024). En lo atinente, en el ámbito administrativo, los tribunales apelativos deben conceder una gran deferencia a las decisiones emitidas por las agencias administrativas debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484; *Asoc. Fcias. v. Caribe Specialty et al. II.,* 179 DPR 923, 940 (2010); véanse también, *Martínez v. Rosado*, 165 DPR 582, 589, (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003).

Ahora bien, nuestro Tribunal Supremo ha reiterado que la deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder, solamente, cuando la misma no esté basada en evidencia sustancial, cuando la agencia ha errado en la aplicación de la ley y cuando su actuación resulte ser una arbitraria, irrazonable o ilegal. *Pérez López v. Depto. Corrección*, 208 DPR 656, 673 (2022); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012). En el escenario particular de las cuestiones de derecho, el Tribunal Supremo ha proferido las siguientes expresiones:

> Hoy hacemos eco a las palabras del foro federal y concluimos que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, supra. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial. *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 2025 TSPR 56.

Por otra parte, nuestro Más Alto Foro ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección, que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *OEG v. Martínez Giraud,* 210 DPR 79, 89 (2022); *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006); véanse también, *Otero v. Toyota*, supra; *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 DPR 521, 532 (1993).

En cambio, tenemos autoridad para revisar las conclusiones de derecho en todos sus aspectos. Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (en adelante, "LPAU"), Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA sec. 9675. Es decir, ostentamos la facultad para revisarlas completa y absolutamente. *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 745 (2012); *Assoc. Ins. Agencies, Inc. v. Com. Seg*. P.R., 144 DPR 425, 436 (1997).  Sin embargo, ello no implica "la sustitución automática del criterio e interpretación del organismo administrativo". *Capó Cruz v. Jta. Planificación et al*., 204 DPR 581, 591 (2020); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

**-B-**

La legislación sobre Condominios fue adoptada para crear "un régimen jurídico que facilite la vida en convivencia y propicie la disponibilidad de viviendas en un área restringida de terreno." Exposición de Motivos de la Ley de Condominios de Puerto Rico, *supra.* En esencia, en el referido régimen jurídico coexisten un dominio exclusivo sobre bienes inmuebles y un condominio forzoso de elementos comunes. *Bravman, González v. Consejo Titulares*, 183 DPR 827, 844 (2011). Uno de los principios rectores del sistema de condominios es garantizar a cada titular el pleno disfrute de su propiedad. *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311, 324 (2012).

A tenor con ello, las áreas de uso común son aquellas requeridas en la concurrencia de varias propiedades bajo una misma estructura para viabilizar el funcionamiento de los apartamentos. Godreau, Michel J., *El condominio: el régimen de propiedad horizontal en Puerto Rico*, Ed. Dictum, 2019, pág. 139. Según dispone la Ley de Condominios, los elementos comunes se dividen en dos (2): necesarios y voluntarios. Los necesarios son todos los indispensables para el disfrute de la propiedad privada de los apartamentos, no son susceptibles de propiedad individual y están sujetos al régimen de indivisión forzosa. Por su parte, los elementos comunes voluntarios pueden quedar sometidos a lo que dispongan los integrantes del régimen. Se permite su transformación de un elemento común en privado, siempre que exista el consentimiento de dos terceras partes de los titulares. Los elementos comunes también se clasifican en generales y limitados. Ley de Condominios, *supra*, sec. 1921p. Los limitados están destinados a cierto número de apartamentos con exclusión de los demás. *Íd.,* sec.1921t.

Por otro lado, y en lo referente a reuniones de Consejo de Titulares, la Ley de Condominios, *supra*, dispone que una convocatoria por titulares "indicará los asuntos a tratar, hora, día y lugar de la reunión." *Íd.*, sec. 1922v. Además, la precitada ley provee disposiciones dirigidas a regular estas asambleas y acuerdos que lleven a cabo los titulares de un inmueble

sometido al régimen de propiedad horizontal. En lo concerniente, el Artículo 52 de la referida legislación establece lo siguiente con relación a la votación de los referidos acuerdos:

[…]

c) Cuando los titulares presentes en una asamblea convocada para tomar un acuerdo que requiera unanimidad o de dos terceras partes (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes estos adoptasen dicho acuerdo, aquellos que, debidamente citados no hubieren asistido serán notificados de modo fehaciente y detallado del acuerdo adoptado, y, si en un plazo de treinta (30) días a partir de dicha notificación no manifestaren en la misma forma su discrepancia quedarán vinculados por el acuerdo que no será ejecutable hasta que transcurra tal plazo, salvo que antes manifestaren su conformidad.

La oposición a un acuerdo que requiera unanimidad o dos terceras partes (2/3) de todos los titulares que a su vez reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes deberá fundamentarse expresamente, bien en la asamblea o por escrito, según se dispone en el párrafo anterior, y en ningún caso podrá basarse en el capricho o en la mera invocación del derecho de propiedad. La oposición infundada se tendrá por no puesta. La declaración de un voto caprichoso será tomada por el Consejo de Titulares en la asamblea en cuestión. 31 LPRA sec. 1922x.

[…]

A su vez, la mencionada ley dispone, en cuanto a un plan de emergencia, los condominios que estén sometidos al régimen de propiedad horizontal, "deberán aprobar en asamblea y mantener un plan de desastre y emergencia, que deberá actualizarse anualmente[…]." *Íd.*, sec. 1923o.

**-C-**

La Regla 27.3 del Reglamento de Procedimientos Adjudicativos de DACO, Reglamento 8034 de 13 de junio de 2011, dispone que el funcionario que presida la vista podrá imponer a la parte perdidosa el pago de costas y honorarios abogados y que el procedimiento se regirá por lo dispuesto en la Regla 44 de Procedimiento Civil.

La aludida Regla 44 de Procedimiento Civil otorga a los tribunales la facultad de imponer honorarios de abogado en caso de que la parte o su abogado haya procedido con temeridad o frivolidad. 32 LPRA Ap. V, R. 44.1(d). La determinación de si ha mediado o no temeridad recae sobre la sana discreción del tribunal sentenciador y solo se intervendrá con ella en

casos en que ese foro haya abusado de tal facultad. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 926 (2012).

Ahora bien, el concepto temeridad es amplio. *Torres Montalvo v. Gobernador ELA*, 194 DPR 760, 778 (2016). El Tribunal Supremo lo ha definido como un comportamiento que incide en los procesos judiciales y afecta, tanto el buen funcionamiento de los tribunales, como la administración de la justicia. *Torres Montalvo v. Gobernador ELA*, supra. Sirven como una penalidad cuando la parte actúa con terquedad, obstinación, contumacia e insistencia, particularmente, cuando "en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito". *Íd.*

Por ejemplo, el Tribunal Supremo ha considerado suficiente para la existencia de temeridad: (1) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; (2) defenderse injustificadamente de la acción; (3) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; (4) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad, y (5) negar un hecho que le conste es cierto a quien hace la alegación. *C.O.P.R. v. S.P.U.*, 181 DPR 299, 342 (2011).

Establecido el marco doctrinal aplicable, procedemos a disponer de la controversia ante nuestra consideración.

**III.**

La recurrente señala como primer error que incidió el DACo al validar una venta exclusiva de un elemento común general, que era nulo por falta de unanimidad, y por violar su destino sin enmendar la escritura matriz. Alega que no hubo una estipulación de los titulares del Condominio para variar el destino y uso de la azotea del edificio.

La escritura matriz del Condominio clasifica, bajo "Elementos Comunes Generales" lo siguiente:

[…]

---(11) – Cuarto de máquinas y/o torres y estructuras superiores del mismo, **estando limitadas en su uso** de manera que este **techo** pueda ser usado para servir de acceso a los cuartos de máquinas, y cuando sea necesario efectuar trabajos de pintura, reparaciones, u otra clase de conservación y mantenimiento del edificio. (Énfasis Nuestro).[8]

[…]

Ahora bien, lo cierto es que el Artículo 4 de la Ley de Condominios, *supra*, requiere un voto unánime por parte de los titulares para variar el uso de un área del inmueble. Sin embargo, surge de la determinación de hecho número quince (15) que "[l]a cesión propuesta **no es sobre la totalidad de la azotea**, sino que el Consejo se reserva una parte que será protegida con barandas de seguridad una vez se concluya el litigio". (Énfasis Nuestro) Esto implica que no es necesario la modificación del uso del techo o azotea. Ello, ya que la limitación que impone la escritura matriz es "de manera que este techo pueda ser usado para servir de acceso a los cuartos de máquinas, y cuando sea necesario efectuar trabajos de pintura, reparaciones, u otra clase de conservación y mantenimiento del edificio". Al analizar la totalidad del expediente, se puede colegir que, aun cediendo parte de la azotea al titular del piso doce (12), se cumple con el uso limitado de este. Seguirá habiendo acceso al techo para los usos descritos en la escritura matriz, por lo que no es necesaria la enmienda a la escritura matriz.

Por otro lado, en el mismo señalamiento de error la parte recurrente sostiene que la venta se realizó sin un voto unánime. Sin embargo, ciertamente se cumplió con el requisito dispuesto en la Ley de Condominios, *supra*. La mencionada ley establece que alguna oposición a un acuerdo que requiera unanimidad por parte de los titulares se deberá fundamentar expresamente. Ahora bien, también dispone que dicha oposición no se puede basar en el capricho o la mera invocación del derecho de propiedad. Más aun, una oposición infundada se tendrá por no puesta, si el Consejo de Titulares en la Asamblea así lo determina por una declaración de un voto caprichoso.

---

[8] Págs. 26-27 del Apéndice Núm. 3 de la Entrada Núm. 1 del SUMAC TA.

En este caso, la parte recurrente se opuso expresamente a la venta de la azotea durante la Asamblea. No obstante, luego de analizar las razones para la oposición, el Consejo de Titulares determinó que estas eran caprichosas. Ello, ya que las razones de la parte recurrente para oponerse eran para el disfrute de la vista y de los alrededores. Al ser así, dicha oposición se tuvo por no puesta, por lo que convirtió el voto a favor de la venta de la azotea en uno unánime, tal como requiere la ley. No se cometió el primer error.

En su segundo señalamiento de error, la parte recurrente sostiene que la convocatoria para la Asamblea era defectuosa. Ello, por esta no anunciar la aprobación de la venta de la azotea del Condominio, ni el precio de esta.

La convocatoria, en su inciso número diez (10) de la Agenda, dispuso lo siguiente: "10. Discussion and possible approval of the feasibility of selling the building's rooftop to the owner of the 12th floor. Discussion on the Sale Price and possible use of the funds." La traducción al español del precitado inciso es la "[d]iscusión y posible aprobación de la viabilidad de vender la azotea del edificio al propietario del piso 12. Discusión sobre el precio de venta y posible uso de los fondos".

El Artículo 50 de la Ley de Condominios, *supra*, dispone en cuanto a las reuniones de titulares que la "convocatoria estará firmada por la persona o personas que convoquen e **indicará los asuntos a tratar** y hora, día y lugar de la reunión". (Énfasis Nuestro). De una somera leída de la agenda, en particular el inciso diez (10), se desprende claramente el asunto a tratar en la Asamblea. La precitada ley no requiere una especificidad a tal nivel que la discusión completa del asunto se desprenda de la agenda. Además, se puede inferir del referido inciso todos los elementos necesarios sobre el tema. Resulta evidente la posibilidad real de la venta de la azotea, así como la discusión sobre el precio de venta y posible uso de los fondos. Coincidimos con la *Resolución* emitida por el DACo en que los titulares del Condominio fueron debidamente informados sobre el tema de viabilidad de

la transacción propuesta y que se trataba de un asunto que tenía probabilidades de poder llevarse a cabo en ese momento. Es razonable pensar que, al ser debidamente informados, era un asunto que se podía llevar a cabo en la misma Asamblea. No se cometió el segundo error.

Como tercer error, la parte recurrente alega que la Junta no presentó un plan de seguridad para acceso a la azotea ni discutió protocolos de evacuación. Sin embargo, al considerar la Ley de Condominios, *supra*, lo que esta requiere es que los condominios sometidos al régimen de dicha ley aprueben y mantengan un plan de desastre y emergencia, que se debe actualizar anualmente. Compartimos el punto de vista de la parte recurrida de que no existe en la Ley de Condominios, *supra*, un requisito adicional al anteriormente mencionado. Tampoco se requiere la revisión de un plan de emergencia como requisito para ceder el uso de un elemento común.

Cabe destacar que el Consejo de Titulares indicó medidas de seguridad ya tomadas, en cuanto al acceso controlado a la azotea, por esta no contar con barandas e incidentes ya ocurridos. También señaló que se instalarán barandas como medida de seguridad en el área de la azotea que el Consejo de Titulares se reservará para sí. Aun así, las mencionadas medidas de seguridad no son un requisito *sine qua non* para la cesión de elemento común. No se cometió el tercer error.

Como cuarto y último error, la parte recurrente sostiene que incidió el DACo al imponerle honorarios por temeridad. Es norma establecida que, en determinaciones de temeridad, solo se intervendrá con ellas cuando el foro haya abusado de tal facultad. *Maderas Tratadas v. Sun Alliance et al.*, supra.

En este caso, el DACo determinó que la parte recurrente insiste en contradecir acuerdos tomados válidamente por el Consejo de Titulares. Concluyó que sus actuaciones configuraron terquedad, temeridad litigiosas y conducta temeraria, por lo que entendió que procedía la imposición de honorarios de abogado a favor de la parte recurrida, por la suma de $1,500.00.

En tal determinación, y luego de evaluar la totalidad del expediente, no colegimos que el DACo haya abusado de su facultad de imponer honorarios por temeridad. Por el contrario, coincidimos en que la convocatoria notificada a los titulares del Condominio constituyó un aviso suficiente sobre los temas que se someterían a la aprobación del Consejo y que la Asamblea se llevó a cabo conforme a derecho. En fin, el Consejo de Titulares cumplió con los procedimientos dispuestos en ley para la cesión de la azotea. No se cometió el cuarto error, por lo que, procede confirmar la *Resolución* recurrida.

**IV.**

Por los fundamentos que anteceden, **confirmamos** la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La jueza Álvarez Esnard disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones